UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| NOE LEINHEISER, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 20-4380 (RBK) |
| | : | |
| v. | : | |
| | : | |
| LT. W. DECKER, et al., | : | **OPINION** |
| | : | |
| Defendants. | : | |

**ROBERT B. KUGLER, U.S.D.J.**

Plaintiff is a federal prisoner formerly incarcerated at FCI Fort Dix, in Fort Dix, New Jersey. He is proceeding *pro se* with a Complaint raising claims pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). For the reasons stated below, the Court will allow the Complaint to proceed in part.

## I.   BACKGROUND

The Court will construe the factual allegations in the Complaint as true for the purpose of this Opinion. This case arises from a disciplinary hearing that took place while Plaintiff was incarcerated at FCI Fort Dix. Plaintiff names the following as Defendants in this matter: (1) Lt. W. Decker; (2) J. Shipp; (3) R. Rudnitsky; (4) R. Robinson; (5) White; (6) Ebinger; (7) Halterman; and (8) Rufin.

On January 4, 2019, Defendants Decker and Shipp singled out Plaintiff for a search out of a large group of inmates. During the search, the officers found a battery pack in Plaintiff's possession, and accused Plaintiff of possessing a cell phone battery. Defendant Decker served the incident report, and Plaintiff responded that it was not a cell phone battery because it "only

contained two (2) points positive and a negative, whereas a cellular phone's battery needs four (4) points of contact." (ECF No. 1-2, at 2–3).

In response, Defendant Decker said that Plaintiff could call it anything Plaintiff wanted, "but that was not going to eliminate the incident report which would be enough to get [Plaintiff] transferred to another institution, since [Plaintiff] liked filing on staff members." (*Id*. at 3). According to Plaintiff, the report contained false claims meant to impugn his character and incriminate him. In particular, the report stated that Plaintiff had a cellular phone rather than just a battery pack, and that he refused work assignments and certain programs. Further, Defendant Decker did not sign or date the incident report.

On January 9, 2019, Plaintiff met with Defendant Rudnitsky, who was a member of the Unit Disciplinary Committee ("UDC"). Defendant Rudnitsky reviewed the charges with Plaintiff and then presented a modified incident report, with a number of additions in red ink, which added the delivery date, name of the delivering officer, delivery time, and a signature from the delivering officer, Defendant Decker. Plaintiff advised that this was not the report that he received from Defendant Decker. (*See* ECF No. 1-3, at 1–2). Plaintiff implies that Defendant Rudnitsky filled in lines 14, 15, and 16, which were blank in the original report. (ECF No. 1-2, at 4).

A week or two later, Plaintiff sought a BP-9 form to appeal the incident report. Defendants Jones, Rufin, and Halterman refused to provide Plaintiff with a BP-9, and actively tried to dissuade Plaintiff from filing an appeal.

On or about February 19, 2019, Defendants Ebinger, Halterman, and Rufin entered Plaintiff's cell and ordered him and his cellmate to "take a walk." (ECF No. 1-2, at 6). Also present was an "acquaintance" of the Plaintiff, presumably another prisoner. (*Id*.). Thereafter, the three

Defendants strip searched the prisoners and then only searched Plaintiff's possessions, throwing them about "as if a tornado had struck the cell." (*Id.*).

Afterwards, Defendant Halterman observed an injury on Plaintiff's hand. Plaintiff said that he scratched himself while retrieving something from his locker. In response, Defendant Halterman falsely stated that Plaintiff had been fighting with his friend, and that the friend "pulled out a shank and cut [Plaintiff]." (*Id.* at 6–7). Defendant Halterman said, "this was all he had to say and both of [them] would be placed in the SHU (Special Housing Unit) and then transferred out of the institution," which "was the sort of thing that happens when you 'cross staff members.'" (*Id.* at 7).

On March 6, 2019, Plaintiff met with Defendant Robinson, who was the Disciplinary Hearing Officer ("DHO") presiding over Plaintiff's DHO hearing. Plaintiff tried to explain that the original report lacked a proper delivery date and signature. (*Id.*). In response, Defendant Robinson explained that "he was not under any circumstances going to expunge [the] incident report, especially not for any sort of 'technicality,'" and then issued a "severe punishment for the offense," including the loss of good time credits. (*Id.*).

On or about March 7, 2019, staff transferred Plaintiff to the SHU. While at the SHU, Plaintiff requested a BP-9 from Defendants Ebinger and White, who agreed, but ultimately failed, to provide Plaintiff with a BP-9. At some point after, the Bureau of Prisons transferred Plaintiff to FCI Otisville in Otisville, New York.

In April of 2020, Plaintiff filed the instant Complaint. Plaintiff contends that Defendants have violated his rights but fails to specify which rights are at issue. The Court will construe the Complaint as raising Fifth Amendment Due Process claims, Fourth Amendment unreasonable

3

search claims, and First Amendment retaliation claims. As relief, Plaintiff seeks compensatory damages and the restoration of good time credits.

## II. STANDARD OF REVIEW

### A. Standard for *Sua Sponte* Dismissal

District courts must review complaints in which a prisoner files suit against "a governmental entity or officer or employee of a governmental entity" and in actions where a prisoner is proceeding *in forma pauperis*. *See* 28 U.S.C. §§ 1915A(a), 1915(e)(2)(B). District courts may *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See id.* According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive *sua sponte* screening for failure to state a claim,[1] the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the [alleged] misconduct." *Iqbal*, 556 U.S. at 678. Moreover, while courts liberally

---

[1] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (per curiam) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *see also Malcomb v. McKean*, 535 F. App'x 184, 186 (3d Cir. 2013) (finding that the Rule 12(b)(6) standard applies to dismissal of complaint pursuant to 28 U.S.C. § 1915A for failure to state a claim).

construe *pro se* pleadings, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

## B. *Bivens* Actions

Section 1983 of Title 42 created a remedy for monetary damages when a person acting under color of state law injures another, but "Congress did not create an analogous statute for federal officials. Indeed, in the 100 years leading up to *Bivens*, Congress did not provide a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017).

The Supreme Court created an implied cause of action in *Bivens* when federal officers violated a person's Fourth Amendment rights. *Bivens*, 403 U.S. at 397. The Court extended the *Bivens* remedy twice more in: *Davis v. Passman*, 442 U.S. 228 (1979) (holding administrative assistant fired by Congressman had a *Bivens* remedy for her Fifth Amendment gender discrimination claim), and *Carlson v. Green*, 446 U.S. 14 (1980) (holding that prisoner's estate had a *Bivens* remedy against federal jailers for failure to treat his asthma under the Eighth Amendment). "These three cases—*Bivens, Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar*, 137 S. Ct. at 1855.

In order to state a claim under *Bivens*, a plaintiff must allege: (1) a deprivation of a right secured by the Constitution or laws of the United States; and (2) that a person acting under color of federal law caused the deprivation. *See Couden v. Duffy*, 446 F.3d 483, 491 (3d Cir. 2006).

5

### III.  DISCUSSION

**A. Due Process Claims Regarding the Incident Report**

The Court construes the Complaint as asserting procedural due process and falsification of evidence claims in connection with Plaintiff's incident report and disciplinary hearing. More specifically, Plaintiff contends that Defendants Decker and Shipp falsely reported that Plaintiff possessed a cell phone and cell battery pack, rather than just a normal battery pack, and that Plaintiff had refused to participate in programs and work assignments.

As to Defendants Rudnitsky and Robinson, as the UDC officer and DHO, Plaintiff contends that these Defendants ignored the false claims in the report. Additionally, Plaintiff argued that the report lacked critical information, such as the service date and the name of the serving officer, but Plaintiff acknowledges that Defendant Decker served him with the incident report. (ECF No. 1-2, at 2–3). Plaintiff also maintains that Defendant Rudnitsky tampered with the report to add missing information at the UDC hearing, and that Defendant Robinson ignored the tampering at the DHO hearing.

It appears, however, that Plaintiff has never invalidated the results of his DHO hearing. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that before a plaintiff may "recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," he must first "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id*. at 486–87. The Supreme Court applied *Heck* to prison disciplinary proceedings in *Edwards v. Balisok*, 520 U.S. 641 (1997).

Nevertheless, even where there has been no prior invalidation of the resulting judgment, a prisoner may bring a claim for monetary damages based on the denial of due process during a prison disciplinary hearing, under certain circumstances. *See Wolff v. McDonnell*, 418 U.S. 539, 554 (1974). More specifically, where a prison disciplinary hearing has not been previously invalidated, a claim challenging a prison disciplinary hearing is cognizable when the claim, if successful, would not necessarily demonstrate the invalidity of the punishment imposed. *See Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005); *Harris v. Ricci*, 595 F. App'x 128, 133 (3d Cir. 2014).

Here, Plaintiff alleges that his due process rights were violated when Defendants Decker and Shipp falsified the contents of the incident report, and when Defendants Rudnitsky and Robinson accepted those false statements at the UDC and DHO hearings. Additionally, Plaintiff appears to believe that his incident report was invalid because Defendant Decker failed to sign and date the report, despite Plaintiff's acknowledgment that he received the report. (ECF No. 1-2, at 2–3). These allegations, if true, would necessarily imply the invalidity of the disciplinary proceeding. Absent a showing that the disciplinary charge has already been invalidated, the Court must dismiss Plaintiff's due process claims regarding the incident report as *Heck* barred.

### B. Claims Regarding Grievances

Broadly construing the Complaint, Plaintiff argues that Defendants Rufin, Halterman, Ebinger, and White refused to provide him with administrative remedy forms or otherwise impeded the administrative remedy system, in violation of his rights under the First and Fifth Amendments.

Generally, the First Amendment confers a "right to petition the Government for redress of grievances," which traditionally involves access to the courts. *Jutrowski v. Twp. of Riverdale*, 904

F.3d 280, 294 n.17 (3d Cir. 2018); *Horsh v. Clark*, No. 17-316, 2019 WL 1243009, at *5 (W.D. Pa. Mar. 18, 2019). The First Amendment does not, however, "impose any affirmative obligation on the government to listen, to respond or . . . to recognize" a grievance. *E.g.*, *Smith v. Arkansas State Highway Emp., Local 1315*, 441 U.S. 463, 465 (1979); *see also Minnesota State Bd. Community Colleges v. Knight*, 465 U.S. 271, 285 (1984) ("Nothing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications.").

Similarly, there is no constitutional right to an "administrative grievance process or any particular relief . . . through such process." *Gittens v. Scholtz*, No. 18-2519, 2019 WL 3417091, at *4 (D.N.J. July 29, 2019) (quoting *Horsh*, 2019 WL 1243009, at *5 (citing *Jones v. N. C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137–38 (1977))); *Bakhtiari v. Spaulding*, No. 17-16, 2017 WL 2778524, at *14 (M.D. Pa. June 27, 2017) ("Even if the prison provides for a grievance procedure . . . violations of those procedures do not give rise to a civil rights cause of action.").

These claims are equally meritless as due process challenges under the Fifth Amendment. As the Third Circuit has held, inmates have "no constitutional right to a grievance procedure" under the Fifth Amendment. *See, e.g.*, *Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009). Consequently, although the impediments to Plaintiff's grievances might have implicated other rights, they did not, standing alone, violate his First or Fifth Amendment rights.

Accordingly, the Court will dismiss with prejudice Plaintiff's First and Fifth Amendment grievance related claims as to Defendants Rufin, Halterman, Ebinger, and White.

### C. Remaining Claims

Plaintiff appears to contend that Defendants Ebinger, Halterman, and Rufin strip searched him and searched his property for the purpose of harassment. The Court has reviewed those claims

and will permit them to proceed at this time. *See Petlock v. Nadrowski*, No. 16-310, 2016 WL 7173781, at *8 (D.N.J. Dec. 8, 2016) (allowing a Fourth Amendment claim to proceed under similar circumstances).

Next, Plaintiff appears to contend that Defendants Shipp, Decker, Ebinger, Halterman, and Rufin retaliated against him for filing lawsuits against other staff members. The Court has reviewed those claims and will permit them to proceed at this time.[2]

## IV.   CONCLUSION

For the foregoing reasons, the Court will dismiss without prejudice Plaintiff's incident report due process claims as *Heck* barred and dismiss with prejudice Plaintiff's grievance related claims. Plaintiff's Fourth Amendment claims against Defendants Ebinger, Halterman, and Rufin, as well as Plaintiff's First Amendment retaliation claims against Defendants Shipp, Decker, Ebinger, Halterman, and Rufin, may proceed. An appropriate Order follows.

Dated: January 12 , 2021              s/Robert B. Kugler
                                      ROBERT B. KUGLER
                                      United States District Judge

---

[2] The Court would welcome briefing from the parties as to whether Plaintiff may pursue a First Amendment retaliation claim in light of *Ziglar*, 137 S. Ct. at 1855. Additionally, the Court acknowledges that Plaintiff's First Amendment retaliation claims against Defendants Shipp and Decker may be *Heck* barred, but the Court declines to address that issue without the full record and adequate briefing.

9