UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NOE LEINHEISER, : | |
| : | |
| Plaintiff, : | Civ. No. 20-4380 (RBK) (AMD) |
| : | |
| v. : | |
| : | |
| LT. W. DECKER, et al., : | **OPINION** |
| : | |
| Defendants. : | |

**ROBERT B. KUGLER, U.S.D.J.**

I. INTRODUCTION

Plaintiff, Noe Leinheiser ("Plaintiff" or "Leinheiser"), is a federal prisoner formerly incarcerated at F.C.I. Fort Dix in Fort Dix, New Jersey. He is now incarcerated at F.C.I. Loretto in Cresson, Pennsylvania. Plaintiff is proceeding pro se with a civil complaint raising claims pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Presently pending before this Court is Defendants' Decker, Ebinger, Halterman and Rufin's motion to dismiss (ECF 26),[1] Plaintiff's motion to amend the complaint (ECF 33) and Plaintiff's motion to file a sur-reply in opposition to Defendants' motion to dismiss. (*See* ECF 36). For the foregoing reasons, Plaintiff's motion to file a sur-reply to Defendants' motion to dismiss will be granted, Plaintiff's motion to amend the complaint will be denied and Defendants' motion to dismiss will be granted.

---

[1] This Court previously administratively terminated Defendants' motion to dismiss. (*See* ECF 27). This was done out of the abundance of caution as Plaintiff had not filed a response to the motion. Thereafter, Plaintiff updated his address of record and requested additional time in which to file a response to the motion to dismiss. (*See* ECF 31). This Court granted Plaintiff's request and Plaintiff subsequently filed his response. (*See* ECF 33). Given these facts, the Clerk will be ordered to reinstate Defendants' motion to dismiss so it can be analyzed and decided.

## II. FACTUAL AND PROCEDURAL BACKGROUND

This Court previously outlined the facts giving rise to Plaintiff's allegations in his complaint in its screening opinion as follows:

> The Court will construe the factual allegations in the Complaint as true for the purpose of this Opinion. This case arises from a disciplinary hearing that took place while Plaintiff was incarcerated at FCI Fort Dix. Plaintiff names the following as Defendants in this matter: (1) Lt. W. Decker; (2) J. Shipp; (3) R. Rudnitsky; (4) R. Robinson; (5) White; (6) Ebinger; (7) Halterman; and (8) Rufin.
>
> On January 4, 2019, Defendants Decker and Shipp singled out Plaintiff for a search out of a large group of inmates. During the search, the officers found a battery pack in Plaintiff's possession, and accused Plaintiff of possessing a cell phone battery. Defendant Decker served the incident report, and Plaintiff responded that it was not a cell phone battery because it "only contained two (2) points positive and a negative, whereas a cellular phone's battery needs four (4) points of contact." (ECF No. 1-2, at 2–3).
>
> In response, Defendant Decker said that Plaintiff could call it anything Plaintiff wanted, "but that was not going to eliminate the incident report which would be enough to get [Plaintiff] transferred to another institution, since [Plaintiff] liked filing on staff members." (*Id.* at 3). According to Plaintiff, the report contained false claims meant to impugn his character and incriminate him. In particular, the report stated that Plaintiff had a cellular phone rather than just a battery pack, and that he refused work assignments and certain programs. Further, Defendant Decker did not sign or date the incident report.
>
> On January 9, 2019, Plaintiff met with Defendant Rudnitsky, who was a member of the Unit Disciplinary Committee ("UDC"). Defendant Rudnitsky reviewed the charges with Plaintiff and then presented a modified incident report, with a number of additions in red ink, which added the delivery date, name of the delivering officer, delivery time, and a signature from the delivering officer, Defendant Decker. Plaintiff advised that this was not the report that he received from Defendant Decker. (*See* ECF No. 1-3, at 1–2). Plaintiff implies that Defendant Rudnitsky filled in lines 14, 15, and 16, which were blank in the original report. (ECF No. 1-2, at 4).

A week or two later, Plaintiff sought a BP-9 form to appeal the incident report. Defendants Jones, Rufin, and Halterman refused to provide Plaintiff with a BP-9, and actively tried to dissuade Plaintiff from filing an appeal.

On or about February 19, 2019, Defendants Ebinger, Halterman, and Rufin entered Plaintiff's cell and ordered him and his cellmate to "take a walk." (ECF No. 1-2, at 6). Also present was an "acquaintance" of the Plaintiff, presumably another prisoner. (*Id.*). Thereafter, the three Defendants strip searched the prisoners and then only searched Plaintiff's possessions, throwing them about "as if a tornado had struck the cell." (*Id.*).

Afterwards, Defendant Halterman observed an injury on Plaintiff's hand. Plaintiff said that he scratched himself while retrieving something from his locker. In response, Defendant Halterman falsely stated that Plaintiff had been fighting with his friend, and that the friend "pulled out a shank and cut [Plaintiff]." (*Id*. at 6–7). Defendant Halterman said, "this was all he had to say and both of [them] would be placed in the SHU (Special Housing Unit) and then transferred out of the institution," which "was the sort of thing that happens when you 'cross staff members.' " (*Id*. at 7).

On March 6, 2019, Plaintiff met with Defendant Robinson, who was the Disciplinary Hearing Officer ("DHO") presiding over Plaintiff's DHO hearing. Plaintiff tried to explain that the original report lacked a proper delivery date and signature. (*Id*.). In response, Defendant Robinson explained that "he was not under any circumstances going to expunge [the] incident report, especially not for any sort of 'technicality,'" and then issued a "severe punishment for the offense," including the loss of good time credits. (*Id*.).

On or about March 7, 2019, staff transferred Plaintiff to the SHU. While at the SHU, Plaintiff requested a BP-9 from Defendants Ebinger and White, who agreed, but ultimately failed, to provide Plaintiff with a BP-9. At some point after, the Bureau of Prisons transferred Plaintiff to FCI Otisville in Otisville, New York.

In April of 2020, Plaintiff filed the instant Complaint. Plaintiff contends that Defendants have violated his rights but fails to specify which rights are at issue. The Court will construe the Complaint as raising Fifth Amendment Due Process claims, Fourth Amendment unreasonable search claims, and First Amendment retaliation claims. As relief, Plaintiff seeks compensatory damages and the restoration of good time credits.

*Leinheiser v. Decker*, No. 20-4380, 2021 WL 194796, at *1–2 (D.N.J. Jan. 19, 2021).

This Court then dismissed Plaintiff's due process claims regarding the incident report. This Court explained its rationale for that dismissal as follows:

> Plaintiff contends that Defendants Decker and Shipp falsely reported that Plaintiff possessed a cell phone and cell battery pack, rather than just a normal battery pack, and that Plaintiff had refused to participate in programs and work assignments. As to Defendants Rudnitsky and Robinson, as the UDC officer and DHO, Plaintiff contends that these Defendants ignored the false claims in the report. Additionally, Plaintiff argued that the report lacked critical information, such as the service date and the name of the serving officer, but Plaintiff acknowledges that Defendant Decker served him with the incident report. (ECF No. 1-2, at 2–3). Plaintiff also maintains that Defendant Rudnitsky tampered with the report to add missing information at the UDC hearing, and that Defendant Robinson ignored the tampering at the DHO hearing.
>
> It appears, however, that Plaintiff has never invalidated the results of his DHO hearing. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that before a plaintiff may "recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," he must first "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486–87. The Supreme Court applied *Heck* to prison disciplinary proceedings in *Edwards v. Balisok*, 520 U.S. 641 (1997).
>
> Nevertheless, even where there has been no prior invalidation of the resulting judgment, a prisoner may bring a claim for monetary damages based on the denial of due process during a prison disciplinary hearing, under certain circumstances. *See Wolff v. McDonnell*, 418 U.S. 539, 554 (1974). More specifically, where a prison disciplinary hearing has not been previously invalidated, a claim challenging a prison disciplinary hearing is cognizable when the claim, if successful, would not necessarily demonstrate the invalidity of the punishment imposed. *See Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005); *Harris v. Ricci*, 595 F. App'x 128, 133 (3d Cir. 2014).

> Here, Plaintiff alleges that his due process rights were violated when Defendants Decker and Shipp falsified the contents of the incident report, and when Defendants Rudnitsky and Robinson accepted those false statements at the UDC and DHO hearings. Additionally, Plaintiff appears to believe that his incident report was invalid because Defendant Decker failed to sign and date the report, despite Plaintiff's acknowledgment that he received the report. (ECF No. 1-2, at 2–3). These allegations, if true, would necessarily imply the invalidity of the disciplinary proceeding. Absent a showing that the disciplinary charge has already been invalidated, the Court must dismiss Plaintiff's due process claims regarding the incident report as *Heck* barred.

*Leinheiser*, No. 20-4380, 2021 WL 194796, at *3–4 (D.N.J. Jan. 19, 2021).

This Court then dismissed Plaintiff's claims against the Defendants regarding failing to provide him with grievances or their impediment to the administrative grievance process. *See id.* at *4. More specifically, this Court explained as follows:

> Plaintiff argues that Defendants Rufin, Halterman, Ebinger, and White refused to provide him with administrative remedy forms or otherwise impeded the administrative remedy system, in violation of his rights under the First and Fifth Amendments.
>
> Generally, the First Amendment confers a "right to petition the Government for redress of grievances," which traditionally involves access to the courts. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 n.17 (3d Cir. 2018); *Horsh v. Clark*, No. 17-316, 2019 WL 1243009, at *5 (W.D. Pa. Mar. 18, 2019). The First Amendment does not, however, "impose any affirmative obligation on the government to listen, to respond or . . . to recognize" a grievance. *E.g.*, Smith v. Arkansas State Highway Emp., Local 1315, 441 U.S. 463, 465 (1979); *see also Minnesota State Bd. Community Colleges v. Knight*, 465 U.S. 271, 285 (1984) ("Nothing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications.").
>
> Similarly, there is no constitutional right to an "administrative grievance process or any particular relief . . . through such process." *Gittens v. Scholtz*, No. 18-2519, 2019 WL 3417091, at *4 (D.N.J. July 29, 2019) (quoting *Horsh*, 2019 WL 1243009, at *5

5

> (citing *Jones v. N. C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137–38 (1977))); *Bakhtiari v. Spaulding*, No. 17-16, 2017 WL 2778524, at *14 (M.D. Pa. June 27, 2017) ("Even if the prison provides for a grievance procedure ... violations of those procedures do not give rise to a civil rights cause of action.").
>
> These claims are equally meritless as due process challenges under the Fifth Amendment. As the Third Circuit has held, inmates have "no constitutional right to a grievance procedure" under the Fifth Amendment. *See, e.g.*, *Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009). Consequently, although the impediments to Plaintiff's grievances might have implicated other rights, they did not, standing alone, violate his First or Fifth Amendment rights. Accordingly, the Court will dismiss with prejudice Plaintiff's First and Fifth Amendment grievance related claims as to Defendants Rufin, Halterman, Ebinger, and White.

*Leinheiser*, 2021 WL 194796, at *4.

However, Plaintiff's First Amendment claim against Defendants Decker, Ebinger, Halterman and Rufin related to Plaintiff's allegations that these Defendants retaliated against him from filing lawsuits against other staff members was proceeded.[2] *See id.* Furthermore, Plaintiff's Fourth Amendment claim against Defendants Ebinger, Halterman and Rufin related to a strip and cell search was proceeded. *See id.*

Defendants then filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* ECF 26). Defendants make two primary arguments. First, Defendants argue that the Court should not expand *Bivens* to Plaintiff's First Amendment retaliation and Fourth Amendment search claims. Second, Defendants argue that they are entitled to qualified immunity.

---

[2] This Court also initially proceeded Plaintiff's First Amendment retaliation claim against Defendant Shipp. However, in July, 2022, this Court granted Plaintiff's motion to dismiss Defendant Shipp from this action. (*See* ECF 23).

6

Plaintiff filed a motion to amend the complaint and response in opposition to Defendants' motion to dismiss. (*See* ECF 33). In essence, Plaintiff seeks leave to amend his complaint to reinsert his previously dismissed Fifth Amendment claim to this action.

Defendants then filed a reply brief. (*See* ECF 34). They argue that if Plaintiff's motion is construed as a motion for reconsideration, it is untimely, and that, even as a motion to amend, it can be denied as futile.

Plaintiff then filed a motion to file a sur-reply. (*See* ECF 36). Plaintiff's motion to file a sur-reply will be granted and be considered part of the record of this case.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss under Rule 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Iqbal*, 556 U.S. at 678. This "plausibility standard" requires that the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is 'not akin to a probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more

than an unadorned, the defendant-harmed-me accusation" must be pleaded; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light* Co., 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

A court conducts a three-part analysis in analyzing a motion to dismiss pursuant to Rule 12(b)(6). *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.*

## IV. DISCUSSION

### A. Plaintiff's Motion to Amend

Plaintiff seeks to amend his complaint to reinsert his due process claim against Defendants Rudnitsky and Robinson related to his disciplinary proceeding. To reiterate, this

8

Court dismissed the claim as barred pursuant to *Heck* because Plaintiff had not shown that the disciplinary proceeding had been invalidated. *See Leinheiser*, 2021 WL 194796, at *3-4. Plaintiff now claims that he has filed a 28 U.S.C. § 2241 habeas petition in the United States District Court for the Southern District of New York that seeks to invalidate the disciplinary proceeding finding. (*See* ECF 33 at 1).

The standard to amend one's complaint is liberal. Indeed, Federal Rule of Civil Procedure 15(a)(2) states that "the court should freely give leave when justice so requires." However, "the decision to grant leave to amend under Rule 15(a) is 'committed to the sound discretion of the district court.'" *See 257 Elizabeth Ave., LLC. v. Cont'l Cas. Co.*, No. 12-4091, 2016 WL 452311, at *2 (D.N.J. Feb. 5, 2016) (quoting *Arab African Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993)). Where "it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party[,]" the Court retains the discretion to deny a request to amend. *See Fraser v. Nationwide Mutual Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2003). Petitioner's motion to amend will be denied as the amendment would be futile.

Plaintiff filed a § 2241 habeas petition in the United States District Court for the Southern District of New York challenging his disciplinary hearing finding. (*See* S.D.N.Y. No. 21-1191). That case remains ongoing. Indeed, on January 16, 2024, the United States Magistrate Judge issued a report and recommendation that the habeas petition be denied. (*See* S.D.N.Y. No. 21-1191, ECF 25). Thus, Plaintiff remains in the same predicament as he was when this Court screened his complaint, namely, that he has not yet shown that his disciplinary hearing finding has been invalidated. As such, Plaintiff's attempt to amend his complaint to re-insert this

previously dismissed claim is futile for the reasons previously expressed in this Court's screening opinion. Accordingly, the motion to amend the complaint will be denied.

B. Defendants' Motion to Dismiss

As noted in this Court's previous screening opinion, the remaining claims against the Defendants are under the First Amendment for retaliation and under the Fourth Amendment for a strip and cell search.

    i.    *Strip Search – Fourth Amendment*

The Court's screening opinion noted that Plaintiff's complaint appeared to contend that Defendants' Ebinger, Halterman and Rufin strip searched him. The Supreme Court has recognized, *in limited situations*, a private cause of action against federal officials. *See Bivens*, 403 U.S. at 389; *see also Bistrian v. Levi*, 912 F.3d 79, 88 (3d Cir. 2018) (stating "*Bivens* is the short-hand name given to causes of action against federal officials for alleged constitutional violations."). "In order to state a claim under *Bivens*, a claimant must show: (1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was caused by an official acting under color of federal law." *Doty v. United States*, Civ. No. 15-3016, 2016 WL 3398579, at *6 (D. N.J. June 15, 2016) (citations omitted).

Defendants note though that in fact, Plaintiff states in his complaint that it was not him that was strip searched, but a different inmate. (*See* ECF 26-1 at 24, ECF 1-2 at 6). Given that the face of Plaintiff's complaint clearly states that he was not strip searched, to the extent that this Court previously allowed a strip search claim against these three Defendants to proceed under the Fourth Amendment, such a claim should not have been screened through given Plaintiff's admission on the face of the complaint and is dismissed.

   ii.  *Cell Search – Fourth Amendment*

Next, Plaintiff alleges that Defendants Ebinger, Halterman and Rufin are liable under the Fourth Amendment for searching his cell. These Defendants assert that they cannot be found liable under *Bivens*.

In *Bivens*, the United States Supreme Court recognized an implied private cause of action under the Fourth Amendment to recover damages against federal actors for violating the prohibition against unreasonable searches and seizures of a private citizen's residence. *See* 403 U.S. at 389, 395-97. *Bivens* has *rarely* been extended to permit a cause of action for damages liability since it was issued in 1971. Indeed, since *Bivens*, the Supreme Court has expanded the *Bivens* remedy to other constitutional violations only twice: under the Fifth Amendment's due process clause, *Davis v. Passman*, 442 U.S. 228 (1979), and under the Eighth Amendment's prohibition against cruel and unusual punishment, *Carlson v. Green*, 446 U.S. 14 (1986). *See Egbert v. Boule*, 596 U.S. 482, 486 (2022) (emphasizing that the Supreme Court has "declined 11 times to imply a similar cause of action for other alleged constitutional violations") (citations omitted).

"The Supreme Court has cautioned on the separation of powers when courts expand *Bivens* causes of actions." *Marinaccio v. United States*, No. 21-11167, 2022 WL 2833960, at* 15 (D.N.J. July 20, 2022) (citing *Ziglar v. Abbasi*, 582 U.S. 120, 135-36, 137 S. Ct. 1843, 1857 (2017) (citing *Iqbal*, 556 U.S. at 675)). The Supreme Court has reiterated that "Congress is far more competent than the Judiciary to weigh such policy considerations . . . and the Judiciary's authority to do so at all is, at best, uncertain." *Egbert*, 596 U.S. at 491 (citations and quotations omitted). Thus, "if there are sound reasons to think Congress might doubt the efficacy or

necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, courts must refrain from creating [it.]" *Ziglar*, 582 U.S. at 137.

There is not "an exhaustive list of factors that may provide a reason not to extend *Bivens*," but separation of powers principles are "central" to the analysis. *Hernandez v. Mesa*, 589 U.S. 93, 140 S. Ct. 735, 743 (2020). The proper separation of powers inquiry is "whether there is any reason to think that judicial intrusion into a given field might be harmful or inappropriate." *Egbert*, 596 U.S. at 496 (citation and quotation marks omitted). "[E]ven a single sound reason to defer to Congress is enough to require a court to refrain from creating such a remedy." *Id.* at 491 (citation and quotation marks omitted); *see also id.* at 493 (noting if there are alternative remedial structures in place, that alone can be a special factor).

Accordingly, there are two steps used to determine whether a claim under *Bivens* may proceed: (1) "[a] court asks first whether the case presents 'a new *Bivens* context'—i.e., is it 'meaningfully different from the three cases in which the Court has implied a damages action[;]' and [(2)] [if so, do] 'special factors' indicate that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 596 U.S. at 492 (internal citation and quotation marks omitted). These two steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.*

Under step one, this Court will first examine whether Plaintiff's Fourth Amendment claim against Defendants for searching Plaintiff's cell constitutes a new *Bivens* context. "[A] new context arises when there are 'potential special factors that previous *Bivens* cases did not consider.'" *Egbert*, 596 U.S. at 492 (citation omitted); *see also Hernandez*, 140 S. Ct. at 743 ("[The Supreme Court's] understanding of a 'new context' is broad."). A "meaningful

12

difference" sufficient to support a finding that a case presents a "new context" can be as minor as, *inter alia*, "the statutory or other legal mandate under which the officer was operating" or simply a "new category of defendants." *See Ziglar*, 582 U.S. at 135, 140. Both examples are present in this case.

There can be little doubt that Plaintiff's Fourth Amendment claim is a new context because it involves allegations regarding the search of a prison cell – not a private residence as was the case in *Bivens*. *Accord Hower v. Damron*, No. 21-5996, 2022 WL 16578864, at *3 (6th Cir. Aug. 31, 2022) (Fourth Amendment claim related to search of a prison cell arises in a new context under *Bivens* which involved a private residence); *Liggins v. O'Sullivan*, No. 19-50303, 2022 WL 787947, at *3 (N.D. Ill. Mar. 15, 2022). Furthermore, while *Carlson* involved a prison setting where the Supreme Court did imply a remedy under *Bivens*, that case arose in the context of an Eighth Amendment inadequate medical care claim, considerably different than the issues in Plaintiff's Fourth Amendment claim. Thus, this Court will next analyze whether special factors counsel hesitation in extending *Bivens* to Plaintiff's Fourth Amendment prison cell search claim.

Defendants argue that there are special factors that counsel hesitation in implying a damages remedy for Plaintiff's Fourth Amendment cell search claim. First, Defendants argue that the Court should not intrude into the Executive's management of federal prisons. (*See* ECF 26-1 at 25-27). Second, Defendants argue that Plaintiff had adequate alternative remedies available to him such as through the Federal Bureau of Prisons' ("BOP") administrative grievance program. (*See* ECF No. 26- at 19-22, 27).

In *Egbert*, the United States Supreme Court noted as follows:

> our cases hold that a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, "an alternative remedial structure." *Ziglar*, 582 U. S., at –––, –––, 137 S. Ct., at 1858; see also *Schweiker* [*v. Chilicky*], 487 U.S.

>> [412,] 425, 108 S. Ct. 2460 [1988)]. If there are alternative remedial structures in place, "that alone," like any special factor, is reason enough to "limit the power of the Judiciary to infer a new *Bivens* cause of action." *Ziglar*, 582 U. S., at ——, 137 S. Ct., at 1858.

*Egbert*, 596 U.S. at 493 (footnote omitted). The Supreme Court further explained "that *Bivens* relief was unavailable because federal prisoners could, among other options, file grievances through an "Administrative Remedy Program." *Egbert*, 596 U.S. at 497 (citation omitted). Indeed, the Supreme Court continued by noting:

>> the question whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts. So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy. That is true even if a court independently concludes that the Government's procedures are "not as effective as an individual damages remedy." *Bush* [*v. Lucas*], 462 U.S. [367,] 372, 103 S. Ct. 2404 [(1983)].

*Egbert*, 596 U.S. at 498.

In this case, the BOP's creation of an administrative remedy program for prisoner grievances counsels against extending *Bivens* to Plaintiff's Fourth Amendment cell search claim. *See Landis v. Moyer*, No. 22-2421, 2024 WL 937070, at *3 (3d Cir. Mar. 5, 2024) (stating that the BOP's administrative remedy program counsels against extending *Bivens* to Eighth Amendment excessive force claim); *Mack v. Yost*, 968 F.3d 311, 321 (3d Cir. 2020) (BOP's administrative remedy program offers a 'convincing reason' for us to refrain from creating new damages remedy against federal prison officials") (internal citation omitted). Given these circumstances, this Court will not imply a *Bivens* remedy for Plaintiff's Fourth Amendment cell search claim. *Accord Hower*, 2022 WL 16578864, at *3-4; *Liggins*, 2022 WL 787947, at *3-5. Thus, Plaintiff's *Bivens* claim against the Defendants for purportedly violating his Fourth

14

Amendment rights by searching his cell is dismissed with prejudice for failure to state a claim upon which relief may be granted.

    iii.    *Retaliation – First Amendment*

Finally, this Court permitted Plaintiff's *Bivens* First Amendment retaliation claims to proceed past screening against Defendants Decker, Ebinger, Halterman and Rufin. *See Leinheiser*, 2021 WL 194796, at *4 (footnote omitted). "A prisoner alleging retaliation must show: (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal connection between the exercise of his constitutional rights and the adverse action taken against him." *Mack v. Yost*, 427 F. App'x 70, 72 (3d Cir. 2011) (quoting *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)).

Prior to the United States Supreme Court decision in *Ziglar*, the United States Court of Appeals for the Third Circuit implied a *Bivens* remedy for an inmate's claim a prison official retaliated against him for exercising his First Amendment rights. *See Mack v. Warden Loretto FCI*, 839 F.3d 286, 296-97 (3d Cir. 2016). However, post-*Ziglar*, the Supreme Court has made it clear that "there is no *Bivens* action for First Amendment retaliation." *Egbert*, 596 U.S. at 498-99; *see also Gilmore v. McGann*, No. 23-1467, 2023 WL 6141606, at *1 (3d Cir. Sept. 20, 2023) (affirming District Court's dismissal of Plaintiff's First Amendment retaliation claim because *Bivens* does not encompass such an action); *Bistrian v. Levi*, 912 F.3d 79, 96 (3d Cir. 2018) ("[T]he retaliation claim is not a recognized *Bivens* remedy[.]"); *King v. Ponce*, No. 21-5628, 2023 WL 8253060, at *4 (D.N.J. Nov. 29, 2023) (citing approvingly to *Egbert* in granting Defendants' motion to dismiss prisoner plaintiff's *Bivens* First Amendment retaliation claim); Thus, Plaintiff's *Bivens* First Amendment retaliation claims against Defendants, Decker, Ebinger,

Halterman and Rufin shall also be dismissed with prejudice for failure to state a claim upon which relief may be granted.

V.      CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (ECF 26) is reinstated. Plaintiff's motion to amend (ECF 33) is denied. Plaintiff's motion to file a sur-reply to Defendants' motion to dismiss (ECF 36) is granted. Defendants' reinstated motion to dismiss (ECF 26) is granted. As Plaintiff's claims are not permitted under *Bivens*, the dismissal of this action will be with prejudice for failure to state a claim upon which relief may be granted.[3] An appropriate order will be entered.

DATED: March 27, 2024                                           s/ Robert B. Kugler
                                                                ROBERT B. KUGLER
                                                                United States District Judge

---

[3] Since Plaintiff's claims are not permitted under *Bivens*, this Court need not analyze Defendants' qualified immunity arguments.